```
              UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                   BROWNSVILLE DIVISION
```

| | |
|---|---|
| JUAN JOSE GARZA-GARCIA,    )<br>    PETITIONER,             )<br>                             )<br>v.                           )<br>                             )<br>MARC MOORE, DISTRICT DIRECTOR FOR )<br>    INTERIOR ENFORCEMENT, I.C.E. )<br>MICHAEL WATKINS, FIELD OFFICE DIRECTOR, )<br>    I.C.E.,                  )<br>ALBERTO GONZALES, U.S. ATTORNEY GENERAL, )<br>    and                      )<br>THE UNITED STATES OF AMERICA, )<br>    RESPONDENTS.             )<br>_____) | C.A. |

```
           PETITION FOR WRIT OF HABEAS CORPUS
    AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
```

Juan Jose Garza-Garcia ("Mr. Garza"), through counsel, respectfully files the instant Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. He challenges the legality and/or constitutionality of a system which allows the Immigration and Customs Enforcement ("ICE") to designate a lawful permanent resident ("LPR") as an "arriving alien," even where the allegations of the Notice to Appear, ("NTA"), do not support said designation, and events during the two years between preparation and filing of the NTA show that it is clearly incorrect, but where the mere fact of this designation, in and of itself, prevents the Immigration Judge from determining whether it is proper for purposes of setting bond, and therefore allows ICE unreviewable discretion to deny or revoke a previously posted bond, and, even if the IJ terminates the removal proceedings, to hold the LPR without bond until all ICE appeals on the merits of the case have been exhausted.

### I.  JURISDICTION AND VENUE

1.  Jurisdiction is laid under 28 U.S.C. §§2241 (habeas corpus); 1331 (federal question), 1346(a)(2) (actions against officers of the United States), and 2201 et seq. (Declaratory Judgment Act).

2.  Mr. Garza is currently detained by Respondents at Los Fresnos, Texas. He resides in Brownsville, Texas, and the primary events in question occurred in Brownsville, and Harlingen, Texas, all of

which are within the jurisdiction of the Court.

## II. THE PARTIES

3. Petitioner Garza is a native and citizen of Mexico, and a lawful permanent resident of the United States.

4. Respondent Marc Moore is the District Director for Interior Enforcement of the San Antonio District of the Bureau of Immigration and Customs Enforcement, ("ICE"). Respondent Michael Watkins is the Field Office Director of the Harlingen Office of ICE. Respondent Alberto Gonzales is the Attorney General of the United States. Each is sued in his official capacity only. The United States of America is also a named Respondent.

## III. THE FACTS

5. Petitioner Juan Jose Garza-Garcia is a native and citizen of Mexico, and a lawful permanent resident of the United States. Petitioner's Exhibit A, herein incorporated by reference.

6. On or about December 7, 2004, Mr. Garza sought admission at the port of entry in Brownsville, Texas, as a returning resident, following a casual, brief, and innocent departure to Matamoros of a few hours, for the purpose of visiting his dying grandfather. He was at that time detained, because he was facing charges of being absent without leave from the military, ("AWOL"), and turned over to military custody.

7. Also on December 7, 2004, an NTA was prepared and served, charging Mr. Garza as an arriving alien who was inadmissible for having departed the U.S. to avoid training or service in the armed forces, within the meaning of 8 U.S.C. §1182(a)(8)(B). *Id.*

8. As a lawful permanent resident, said charge did not result in Mr. Garza being deemed to be "seeking admission," under 8 U.S.C. §1101(a)(13)(C), and, as determined by Respondents in October, 2006, *id.,* at pp. 6-8,10, he alleges that he was admitted to the

U.S., as defined by §1101(a)(13)(A), rather than "paroled," under §1182(d)(5), and made an "entry" at that time.

9. After his December 7, 2004 entry, Mr. Garza was court-martialed and convicted of AWOL. He served about 70 days, was given a "bad conduct" discharge, and released. He then resumed his life as a lawful permanent resident, working with Garcia Trucking, *id*. at 2.

10. On October 10, 2006, under an agreement with prior counsel, Mr. Garza presented himself to the Respondents' Harlingen office, where he was arrested, and held on a $5,000 bond, pursuant to 8 U.S.C. §1226. According to the I-213 prepared at that time, the "NTA was amended and is included in the A-file." The I-213 also noted that Mr. Garza "reentered the US on 12/7/04 through Brownsville, TX," and that he had been "released from custody," *id*. at pp. 7-8. The Notice of Custody Determination also advised Mr. Garza that he had been processed under Section 236 of the Act, (8 U.S.C. §1226), and that he was eligible for a bond redetermination hearing before an Immigration Judge. *Id*. at 6.

11. Prior counsel requested such a bond redetermination. However, since the only NTA available to Mr. Garza was the one dated December 4, 2004, which alleged that he was an arriving alien, and consistent with (unpublished) BIA decisions, on October 16, 2006, Judge Peterson held that he lacked jurisdiction in bond proceedings to determine whether Mr. Garza was properly charged as an arriving alien, and declined to hear the matter. *Id*. at p.9. Mr. Garza thereafter posted the original $5,000 bond. In lieu of the required I-94, temporary proof of lawful permanent resident status, for identification purposes he was given a copy of the warrant for his arrest, issued under the authority of 8 U.S.C. §1226, by Respondent Marc Moore, with his photo, stamped "bond posted." It noted that he had *entered* the United States on December 7, 2004. *Id*. at 10. [1]

---

[1] ICE's findings that Mr. Garza "entered" the U.S. on December 7, 2004, and that he was at that time "released from custody," are

12.  Mr. Garza complied with all the requirements of his bond.  He continued with his employment, supported his family, and presented himself before Immigration Judge Peterson in Harlingen, Texas, for hearings on the NTA, where he denied the charge of removability.

13. On May 21, 2007, Mr. Garza appeared with prior counsel before Judge Peterson, prepared to proceed with a scheduled hearing on the merits of the (obviously frivolous) charge that he had departed the U.S. on December 7, 2004, to evade military service, and returned the same day.  At the commencement of that hearing, however, he was served with an I-261, charging that his AWOL conviction was a crime involving moral turpitude, ("cimt"), and that this rendered him inadmissible. *Id.* at 12-13. His attorney requested time to address the new charge, and the case was adjourned until August 17, 2007.

14.  In support of the new charge, the ICE Attorney cited only *Matter of B-M—,* 6 I&N Dec. 756 (BIA 1955) (desertion during Korean conflict is desertion in time of war and therefore renders one excludable as permanently ineligible for U.S. citizenship under (then) 8 U.S.C. §1182(a)(22) [now §1182(a)(8)]).  Said case has no bearing on whether AWOL is a cimt. The ICE Attorney failed to disclose BIA and federal court authority contrary to his position, such as *Matter of S-B-*, 4 I&N Dec. 682,682-83 (BIA 1952) (desertion in time of war is not a cimt, because the statute does not make motive an element of the offense), and *U.S. v. Frazier*, 418 F.2d 854 (4th Cir. 1969) (AWOL is not a cimt). [2]

---

inconsistent with the claim in the NTA prepared on December 7, 2004 that he is an "arriving alien." On November 28, 2006, the 2004 NTA was filed with the Immigration Court.  It is presently unknown what happened to the amended NTA, prepared on October 10, 2006.

[2]   There is also authority for the proposition that a court-martial for a purely military offense (e.g., desertion), as opposed to one which is also an offense under civilian law (e.g., murder), is not a "conviction" for purposes of determining whether one has been "convicted" of a crime involving moral turpitude. *See Braswell v. State*, 306 So.2d 609, 611 (Fla. App. 1975) (citing authority).

15.  As Mr. Garza exited Court after the May 21st hearing, he was taken into custody by waiting ICE agents, and returned to detention at Port Isabel, where he is currently being held without bond.

16.  Mr. Garza has no administrative remedies.  Although bond was set, and posted, pursuant to 8 U.S.C. §1226, based on 2006 finding by Respondents that he had "entered" the U.S., and been released from custody, on December 7, 2004, the 2004 NTA, filed in 2006, charges that he is an arriving alien, and the BIA has repeatedly held that IJs and the BIA lack jurisdiction over bond applications of aliens charged as arriving aliens, even for the purpose of determining whether they are properly classified as such.[3]  *See also* 8 C.F.R. §1003.19(h)(2)(ii) (2006).

### IV.  APPLICABLE LAW

The law governing whether or not Mr. Garza is an arriving alien, or whether he has been "admitted," is found at 8 U.S.C. §1101(a)(13):

> (13) (A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.
> (B) An alien who is paroled under section 212(d)(5) [8 USCS § 1182(d)(5)] or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

---

[3]  Although there are no published BIA decisions so holding, the BIA has consistently reached this conclusion in unpublished cases, including *In Re: Frank Torsten Hebel,* 2006 WL 3485693 (BIA); *In Re: Israel Perez Leon,* 2006 WL 901332 (BIA); *In Re: Hun Dai Trang*, 2005 WL 1396803 (BIA); *In Re: Victor Picon-Alvarado*, 2004 WL 2374542 (BIA); *In Re: Andrzej Stankiewicz,* 2004 WL 880272 (BIA); *In Re: Dave Eliott Johnson*, 2003 WL 23508470 (BIA), and *In Re: Jose Cesario De Jesus-Rivera*, 2003 WL 23521903 (BIA).

Prior to the promulgation of 8 C.F.R. 1003.19(h), in 2001, it was accepted that Immigration Judges *could* determine whether aliens were properly designated as arriving aliens. *See, Richardson v. Reno,* 162 F.3d 1338,1343 (11th Cir. 1998), vacated on other grounds, 526 U.S. 1142 (1999), wherein the Immigration Judge determined that the LPR was, indeed, an "arriving alien," and *for that reason* declined to exercise jurisdiction over his bond application.

> (C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien--
>> (i) has abandoned or relinquished that status,
>> (ii) has been absent from the United States for a continuous period in excess of 180 days,
>> (iii) has engaged in illegal activity after having departed the United States,
>> (iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings,
>> (v) has committed an offense identified in section 212(a)(2) [8 USCS §1182(a)(2)], unless since such offense the alien has been granted relief under section 212(h) or 240A(a) [8 USCS §§ 1182(h) or 1229b(a)], or
>> (vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

As provided by 8 U.S.C. §1226 (2006):

> (a) Arrest, detention, and release.  On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>> (1) may continue to detain the arrested alien; and
>> (2) may release the alien on--
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>> (B) conditional parole; ...
>
> (b) Revocation of bond or parole.  The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

As further provided by 8 C.F.R. §1003.19(h)(2):

> (2)(i) Upon expiration of the Transition Period Custody Rules set forth in section 303(b)(3) of Div. C. of Pub. L. 104-208, an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:
>> (A) Aliens in exclusion proceedings;
>>
>> (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section

>   212(d)(5) of the Act;
>
>   (C) Aliens described in section 237(a)(4) of the Act;
>
>   (D) Aliens in removal proceedings subject to section 236(c)(1) of the Act (as in effect after expiration of the Transition Period Custody Rules); and
>
>   (E) Aliens in deportation proceedings subject to section 242(a)(2) of the Act (as in effect prior to April 1, 1997, and as amended by section 440(c) of Pub. L. 104-132).
>
> (ii) Nothing in this paragraph shall be construed as prohibiting an alien from seeking a redetermination of custody conditions by the Service in accordance with part 1235 or 1236 of this chapter. In addition, with respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs.

Although Respondents have long contended that the Secretary of the Department of Homeland Security and the Attorney General have "concurrent" jurisdiction to set bonds in the first instance, the source of the claimed jurisdiction of DHS to do so is unclear. Notably, 8 U.S.C. §1226 grants this authority only to the Attorney General, and 8 C.F.R. §1003.19(h)(2)(ii) permits *the alien* to seek "a redetermination of custody conditions by the Service [DHS] in accordance with part 1235 or 1236 of this chapter," but does not grant the *Service* this authority, absent a request by the alien. This is to be contrasted with other sections of the INA, which specifically recognize the authority of DHS in certain areas. *See, e.g.,* 8 U.S.C. §1252(a)(2)(B) (2006) (emphasis added):

>   (B) Denials of discretionary relief
>
>   Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>   ...
>   (ii) any other *decision or action of the Attorney General*

7

> *or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

Regardless of the source, (if any), of ICE's authority to revoke Mr. Garza's bond, by filing with the Immigration Court, in 2006, the 2004 NTA, designating him as an arriving alien, ICE prevented him from challenging his detention through the Immigration Court.

In *Demore v. Kim,* 538 U.S. 510 (2003), the Supreme Court found that Congress could constitutionally mandate that certain criminal aliens be detained for the "brief period" necessary for removal proceedings. In so holding, the Court relied heavily on the availability of the safety valve, a so-called "*Joseph* hearing," at which the alien could challenge whether he was properly included within the statutory category of those subject to mandatory detention. *Id.,* 538 U.S. at 513-14:

> Respondent does not dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers. Respondent also did not dispute the INS' conclusion that he is subject to mandatory detention under § 1226(c). ... In conceding that he was deportable, respondent forwent a hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category. See 8 CFR § 3.19(h)(2)(ii) (2002); *Matter of Joseph,* 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999).[FN] Respondent instead filed a habeas corpus action pursuant to 28 U.S.C. § 2241 in the United States District Court for the Northern District of California challenging the constitutionality of § 1226(c) itself. App. to Pet. for Cert. 2a. He argued that his detention under § 1226(c) violated due process because the INS had made no determination that he posed either a danger to society or a flight risk. *Id.,* at 31a, 33a.
>
> FN3. This "*Joseph* hearing" is immediately provided to a detainee who claims that he is not covered by § 1226(c). Tr. of Oral Arg. 22. At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to

8

>establish that he is in fact subject to mandatory detention. See 8 CFR § 3.19(h)(2)(ii) (2002); *Matter of Joseph,* 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999). Because respondent conceded that he was deportable because of a conviction that triggers § 1226(c) and thus sought no *Joseph* hearing, we have no occasion to review the adequacy of *Joseph* hearings generally in screening out those who are improperly detained pursuant to § 1226(c). Such individualized review is available, however, and Justice SOUTER is mistaken if he means to suggest otherwise.

Petitioner herein challenges as inconsistent with the spirit, if not the letter, of *Demore v. Kim*, the failure to include in 8 C.F.R. §1003.19(h)(2)(ii) aliens who claim to have been wrongfully designated as "arriving aliens," thus depriving them of the ability to contest this designation before the IJ, in the context of an application to redetermine their bonds. He urges that this omission is inconsistent with 8 U.S.C. §1226, and/or violative of Due Process. But for the (arbitrary) designation of Petitioner as an "arriving alien," the Immigration Judge would have jurisdiction to determine whether he was properly subject to mandatory detention, (*i.e.,* whether AWOL is a cimt), and if not, to set a bond. Here, it is not Congress, but an omission from a regulation, (possibly even an oversight), that gives the prosecutor, (ICE), unreviewable discretion to designate him as an "arriving alien,"[4] and subject him to "mandatory" detention.

## V. CAUSES OF ACTION
### A. STATUTORY INTERPRETATION

Mr. Garza first asserts that the apparent limitation of 8 C.F.R. §1003.19(h)(ii) preventing Immigration Judges from determining whether LPRs designated as "arriving aliens" by ICE properly fall within that designation is contrary to 8 U.S.C. §1226, and that the

---

[4] This is true even where, as here, the NTA designating him as an arriving alien shows on its face that the grounds of inadmissibility charged, to wit, that he departed the U.S. to evade military service, under 8 U.S.C. §1182(a)(8), even if true, would *not* cause him to be seeking admission under §1101(a)(13)(C).

9

regulation should be interpreted to allow IJs to make such threshold determinations. As seen from *Richardson v. Reno, supra,* the jurisdiction of the Immigration Judge to determine whether an LPR was properly classified as an "arriving alien" was unchallenged prior to the 2001 promulgation of 8 C.F.R. §1003.19(h). Since that section was intended to codify *Matter of Joseph,* 22 I&N Dec. 799 (BIA 1999), it is unlikely that it was meant to strip the IJ's of this power. This is particularly true given that there were no changes to the underlying statute, 8 U.S.C. §1226, which would warrant the diminution of the IJ's authority in such cases.

Further, excluding persons such as the Petitioner herein from the categories of those who may seek redress from an IJ, simply transfers the burden of making these determinations to the United States District Court, in habeas corpus proceedings. It is highly unlikely that this was the intent of 8 C.F.R. §1003.19(h)(ii).

### B.   DUE PROCESS

As seen from *Demore v. Kim, supra,* the "safety valve" allowing the IJ to determine whether a bond applicant is eligible for a bond is crucial to the constitutionality of 8 U.S.C. §1226(c). There is no principled reason that it should be less important to determining whether an alleged "arriving alien" is actually seeking admission, and is therefore ineligible for a custody determination by an IJ, and the lack of such an opportunity denies Mr. Garza Due Process.

### C.   EQUAL PROTECTION

Aliens improperly designated as falling within the other categories of those over whom the Immigration Judge lacks jurisdiction to set bond may challenge this designation under 8 C.F.R. §1003.19(h)(2)(ii), and IJs may hear their challenges. This includes aliens who are allegedly deportable for certain criminal conduct, as specified by 8 U.S.C. §1226(c), and those who are allegedly deportable on security and related grounds, pursuant to 8 U.S.C. §1227(a)(4). There is no rational basis for failing to allow aliens, particularly LPRs, who claim to have been wrongfully designated as

"arriving aliens" to make like challenges, and the lack of such an opportunity deprives Mr. Garza of the Equal Protection of the laws.

## V.   PRAYER FOR RELIEF

WHEREFORE, it is respectfully requested that this Honorable Court grant the requested writ, and Order that Immigration Judge Peterson forthwith conduct a hearing, in bond proceedings, to determine whether Mr. Garza is properly designated as an "arriving alien," and if Judge Peterson finds that he is not properly so designated, to conduct a custody redetermination hearing.

It is further urged that the Court issue a Declaratory Judgment, declaring that Mr. Garza has a Due Process and/or Equal Protection right to challenge his designation as an "arriving alien" before an Immigration Judge in bond proceedings.

It is further urged that the Court issue a permanent injunction, enjoining and restraining Respondents from refusing to allow Mr. Garza to challenge his status as an "arriving alien" in custody redetermination proceedings.

Alternatively, it is urged that this Court make the threshold determination that Mr. Garza is not an "arriving alien," and remand the case to Judge Peterson for a custody redetermination hearing.

Finally, it is also urged that the Court require Respondents to pay Petitioner's costs, and reasonable attorneys fees, and grant such other and further relief as the Court may consider appropriate.

Respectfully Submitted,

s/ Lisa S. Brodyaga
Attorney at Law
17891 Landrum Park Road                Federal Id:  1178
San Benito, TX 78586                   Texas State Bar: 03052800
(956) 421-3226
(956) 421-3423 (fax)

VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with the facts of the case as stated above, and that they are true and correct to the best of my knowledge and belief.

s/ Lisa S. Brodyaga
_____

CERTIFICATE OF SERVICE

I certify that a courtesy copy of the foregoing, with Exhibit A, was electronically served on Rene Benavides, AUSA, this 28th day of May, 2007.

s/ Lisa S. Brodyaga
_____